508 P.2d 553

Joe BLACKBURN, as guardian ad litem for
Ramona Blackburn, a minor child,
Plaintiff-Appellant,

v.

BOISE SCHOOL BUS CO., an Idaho corpo-
ration, and Dan Smith, Defend-
ants-Respondents.

No. 10909.

Supreme Court of Idaho.

April 4, 1973.

James E. Scanlan, of Sallaz & Scanlan,
Boise, for plaintiff-appellant.

Phillip M. Barber, Elam, Burke, Jeppe-
sen, Evans & Boyd, Boise, for defendants-
respondents.

DONALDSON, Chief Justice.

This action was commenced by plain-
tiff-appellant Joe Blackburn, as guardian
ad litem, to recover for personal injuries
sustained by Ramona Blackburn while she
was riding in a Boise school bus. At the
time of the accident, Ramona was seated
on the rear seat of the bus. The rear
wheels of the bus encountered a "severe
bump" (so termed by the driver), and Ra-
mona and at least two other children were
thrown up to the ceiling of the bus. Ra-
mona came down, hit her mouth on the
metal railing of the seat in front of her,
and sustained severe injury to her teeth.

The accident resulting in Ramona's inju-
ry occurred at the site of a newly complet-
ed bridge, which had been under construc-

tion for a week or a week and a half. At the jury trial conducted below, the bus driver testified that he had driven by the bridge every day while it was under construction and, therefore, on the day of the accident he was aware that construction work had been going on in this area. On the last school day (a Friday) prior to the accident, it was still necessary to detour around the new bridge, since construction had not yet been completed. On the day of the accident (a Monday), the bus driver, when the bus was about two hundred feet away from the bridge, observed that it was no longer under construction. The previously posted warning signs had been removed, and workmen were no longer present. The bus driver estimated that the bus was traveling at about twenty miles per hour when it reached the bridge. According to the driver's recollection, the only time he checked the bridge's condition was when he was about two hundred feet away. It was not until the accident happened that the driver realized that some defect in the roadway existed in the area of the bridge. The bus's front wheels did not give the driver any indication of the presence of a severe bump; nevertheless, the bus's rear wheels did hit such a bump, and Ramona's injury occurred as a result.

An inspector for the Ada County Road Department testified that he inspected the bridge in question within one or two working days after its completion. He could not say whether construction was completed on the Friday before the accident or on the Monday of the accident. If the bridge were completed on Friday, he would not have inspected it until Monday or Tuesday; if it were completed on Monday, he might not have inspected it until Wednesday. In any event, upon examining the bridge for proper completion, the inspector ordered the repair of an irregularity in the roadbed. The passing of traffic had caused a depression to form in the excavated area between the bridge surface and the paved highway; in addition, the gravel from the depression had formed a "lump"

on the paved surface. The result was a "drop" of four or five inches (measured from the top of the "lump" to the bottom of the depression). The inspector was unable to say whether this defect would have been visible to the bus driver as he approached the bridge on the day of the accident; the inspector had no knowledge of the condition of the roadbed at the time Ramona was injured.

■ After the plaintiff had completed presentation of his case to the jury, the defendants made a "motion for involuntary dismissal." Concluding that there was insufficient evidence for reasonable minds to differ on the question of negligence, the district court granted the defendants' motion. In a jury case, a motion for involuntary dismissal made at the close of the plaintiff's case is indistinguishable in operation and effect from a motion for a directed verdict. Van Vranken v. Fence-Craft, 91 Idaho 742, 430 P.2d 488 (1967). When a motion for involuntary dismissal under I.R.C.P. 41(b) is made in a jury case, it must be treated as a motion for a directed verdict under I.R.C.P. 50(a). Jordan v. Ingram, 95 Idaho ——, 509 P.2d 324 (1973) (dissenting opinion); Bauscher Grain v. National Surety Corp., 92 Idaho 229, 440 P.2d 349 (1968).

The appellant's sole contention is that the doctrine of res ipsa loquitur is applicable in this case and that, therefore, with the aid of that doctrine the appellant has established a prima facie case of negligence against the respondents.

■ Both sides to this appeal agree that the doctrine of res ipsa loquitur should be applied only when two elements coexist: (1) the agency or instrumentality causing the injury was under the control and management of the defendant; and (2) the circumstances were such that common knowledge and experience would justify the inference that the accident would not have happened in the absence of negligence. *E. g.,* Whitt v. Jarnagin, 91 Idaho

181, 418 P.2d 278 (1966); Flowerdew v. Warner, 90 Idaho 164, 409 P.2d 110 (1965); Shaffer v. Adams, 85 Idaho 258, 378 P.2d 816 (1963).

When the district court rendered its decision in this case, it did not, unfortunately, have the benefit of our recently released decision in Straley v. Idaho Nuclear Corp., 94 Idaho 917, 500 P.2d 218 (1972). The facts presented in *Straley* are strikingly similar to those before us today. Thus, in *Straley*, as in this case, the injured party was seated on the rear seat of the bus. There, as here, the victim was ejected with sufficient force to hit the ceiling of the bus. There, as here, the plaintiff claimed that this ejection was caused by a "severe bump." And finally, in that case, as in this one, the exact nature of the obstruction encountered by the bus was uncertain; although in *Straley* the plaintiff recalled that "the road was extremely bumpy and replete with pot-holes," he claimed only that the bus hit "something" (94 Idaho at 919, 500 P.2d at 220). In the *Straley* case, which involved an appeal from a summary judgment in favor of the defendant bus owner, we held that the doctrine of res ipsa loquitur should be applied at trial. In doing so, we reiterated the guidelines applicable in determining the propriety of an order granting summary judgment:

> "In determining whether any issue of material fact is in dispute, it is well settled that the facts should be liberally construed in favor of the party against whom summary judgment is sought. * * * On appeal from an order granting summary judgment, this court must construe the evidence presented to the district court liberally in favor of the party opposing the order and accord him 'the benefit of all inferences which might be reasonably drawn.' " 94 Idaho at 918–919, 500 P.2d at 219.

Although the case at bar is here upon an appeal from an order granting dismissal (directed verdict), the governing standards are analogous. For the purpose of deciding whether the trial court erred in granting the defendants' motion, we must view the evidence introduced up to that point in the light most favorable to the plaintiffs, and the plaintiffs are entitled to all reasonable inferences which can be drawn from facts established by their case in chief. Highbarger v. Thornock, 94 Idaho 829, 832, 498 P.2d 1302 (1972); Curtis v. Dewey, 93 Idaho 847, 475 P.2d 808 (1970); Loving v. Freeman, 93 Idaho 426, 462 P.2d 519 (1969); Van Vranken v. Fence-Craft, *supra.*

Despite the apparent similarity between *Straley* and the case at bar, the respondents nevertheless contend that neither of the elements required for applying res ipsa is present in this case. The respondents first argue that they did not have control over the instrumentality which caused the injury. This argument is premised upon the assumption that the bumpy *road,* and not the bus, was the instrumentality which caused the injury. This assumption is, in our opinion, erroneous. Whether or not the defective roadbed was in fact the product of the highway department's negligent construction, as suggested by the respondents, it was the respondents who "had exclusive control of *the instrumentality—i. e., the bus—which caused [the] injury."* Straley v. Idaho Nuclear Corp., *supra,* 94 Idaho at 922, 500 P.2d at 223. Even assuming *arguendo* that the highway department may have been negligent in maintaining a newly constructed roadway, we note that the respondent driver, in exercising his control over the bus, may have been negligent in failing to slow down as he approached a dangerous defect. Although the defective roadbed was admittedly not under the control of the respondents, the bus and the manner in which it negotiated the defective roadway was clearly under its control. Furthermore, as the respondents themselves submit, there is no evidence in the record as to the condition of the roadbed at the time of the accident; there is no proof as to what that "something" was which caused Ramona's ejectment, and consequently it cannot be stated

with any certainty that the object encountered by the bus was in fact the product of third party negligence. We conclude that this case is not distinguishable from *Straley* on the first ground suggested by the respondents.

In addition to contending that the injurious instrumentality was not under their control, the respondents argue that in this case common knowledge and experience do not justify the inference that the accident would not have occurred in the absence of negligence. Thus, in their brief they say: "Children bounce or fall from bus seats and automobile seats with both frequency and abandon. * * * [The evidence establishes] a quite ordinary bump having been taken without negligence leading to an unfortunate result * * * not something occurring which only negligence could explain." In *Straley*, we stated that "when it appears that the injury was resultant from a severe jerk not incident to the normal operation of the conveyance, the application of res ipsa loquitur is proper." 94 Idaho at 922, 500 P.2d at 223. In that case, we concluded that the doctrine of res ipsa loquitur should be applied where a "severe bump" causes a bus passenger to be ejected from his seat with sufficient force to hit the ceiling. Since the facts presented here are substantially identical to those presented in *Straley*, it follows that the respondents' second contention is without merit.

■ Because the doctrine of res ipsa loquitur is applicable, the plaintiff-appellant was entitled to have the case submitted to the jury. Hagan & Cushing Co. v. Washington Water Power Co., 99 F.2d 614, 616 (9th Cir. 1938) (applying Idaho law); Whitt v. Jarnagin, *supra*; C. C. Anderson Stores Co. v. Boise Water Corp., 84 Idaho 355, 372 P.2d 752 (1962).

Judgment reversed and cause remanded for a new trial. Costs to appellant.

SHEPARD, McQUADE and McFADDEN, JJ., and NORRIS, District Judge, concur.